UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GILBERT G. GHINIS,
            Plaintiff,

v.                                                          Case No. 5:21-cv-554-JA-PRL

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES
(USCIS),
            Defendant.

## ORDER

Gilbert Ghinis brought this action in November 2021 against United States Citizenship and Immigration Services (USCIS) under the Freedom of Information Act (FOIA) after unsuccessfully seeking to obtain documents from USCIS establishing that he is a United States citizen. The case is now before the Court on the parties' cross-motions for summary judgment. (*See* Docs. 14 & 15). Because genuine issues of material fact remain regarding the adequacy of USCIS's search for documents responsive to Ghinis's FOIA request, both motions are denied without prejudice.

I.    **Background**[1]

Ghinis, who is now eighty years old and is of Egyptian descent, claims

---

[1] The record is scant, and the Court derives the Background section from the Complaint (Doc. 1) and the parties' summary judgment filings (Docs. 14–17).

that his father became a naturalized United States citizen in 1955 and that Ghinis, who was then twelve years old, also became a United States citizen at that time. Believing that he was a United States citizen, Ghinis later registered to vote and voted in several elections in this country.

For over a decade, Ghinis has tried to obtain from USCIS proof of his United States citizenship and, in light of USCIS's position that he is not a citizen, to become one.[2] USCIS assigned Ghinis two Alien Registration Numbers—A007 483 725 and A210 065 355. (Doc. 15 at 3). In August 2018, Ghinis submitted two FOIA requests to USCIS—one seeking a complete copy of the alien registration file (A-File) corresponding to Alien Registration Number A007 483 725 (the 007 A-File) and the other seeking the file corresponding to Alien Registration Number A210 065 355 (the 210 A-File). (*See* Doc. 14 at 1; Doc. 15 at 8 & 9 n.1).

In August 2019, the USCIS National Records Center (NRC) responded to

---

[2] For example, in 2007, Ghinis applied for a replacement citizenship document (Form N-565), but USCIS denied that application in 2009. (Doc. 15 at 4). In 2012, USCIS adjusted Ghinis's status to lawful permanent resident. (*Id.*). And Ghinis filed an Application for Naturalization in 2016, but USCIS denied that application in March 2018. (*Id.*).
In April 2019, USCIS served Ghinis with a Notice to Appear before an immigration judge for removal proceedings. (*Id.* at 5, 18–20). The Notice to Appear asserted that Ghinis was not a United States citizen and was subject to removal because he was an alien who had falsely represented that he was a United States citizen for the purpose of voting. (*Id.* at 20). However, last month Ghinis succeeded in becoming a U.S. citizen. (*See* Status Report, Doc. 25, at 1). Nonetheless, he continues to pursue his FOIA claim. (*See id.* at 2).

Ghinis's request regarding the 007 A-File by stating it had been unable to locate that A-File and was closing the request. (Doc. 15 at 5). Plaintiff administratively appealed the denial of that request, and in October 2019 USCIS sent the FOIA request back to the NRC for a further search. (*Id.*). Then, in January 2020, the NRC stated that it had found 394 pages of responsive documents, though it released only 377 of those pages in their entirety and 15 pages in part. (*Id.* at 6). These documents had both A-File numbers on them, but Ghinis describes them as part of the 210 A-File rather than the 007 A-File. Ghinis treated the failure to release records from the 007 A-File as a denial and appealed, but USCIS denied that appeal in February 2020. (*Id.*).

Ghinis filed this suit in November 2021. The parties elected not to pursue formal discovery and to submit cross-motions for summary judgment. (*See* Joint Case Management Report, Doc. 10). Those motions are now ripe for rulings. (*See* Docs. 14, 15, 16, & 17). Ghinis explains that he "is not seeking to litigate the withholding of records from the [210 A-File]," (Doc. 15 at 9 n.1), but he maintains that USCIS did not conduct an adequate search for his complete 007 A-File—the only issue before the Court.

## II. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for

3

summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party and "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

"Cross motions for summary judgment do not change the standard." *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007). Such motions "are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.*

### III. Discussion

FOIA "codified 'a strong public policy in favor of public access to information in the possession of federal agencies.'" *Broward Bulldog, Inc. v. U.S. Dep't of Justice*, 939 F.3d 1164, 1175 (11th Cir. 2019) (quoting *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1190 (11th Cir. 2007)). Among other things, FOIA requires agencies to "make . . . records promptly available to any person" who makes a "request for records which (i) reasonably describes such records and (ii) is made in accordance with" published procedural rules. 5 U.S.C. § 552(a)(3)(A). Indeed, if "an agency receives a request for records, it may

4

withhold information from responsive documents only if [the information] falls within one of nine statutory exemptions."[3] *Broward Bulldog*, 939 F.3d at 1175.

Where a requester challenges the adequacy of an agency's search for responsive documents, the agency bears the burden of establishing the adequacy of the search. *Id.* at 1176. The adequacy of the search "is judged by a reasonableness standard," under which "the agency need not show that its search was exhaustive." *Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1558 (11th Cir. 1990), *rev'd on other grounds*, 502 U.S. 164 (1991). Instead, "the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Id.* (alteration in original) (further internal quotation marks omitted) (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). "The government agency may meet this burden by producing affidavits of responsible officials 'so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith.'" *Id.* (quoting *Miller*, 779 F.2d at 1383).

Here, in support of its summary judgment motion USCIS submitted the declaration of Cynthia Munita, the Chief FOIA Officer at USCIS's NRC. (*See*

---

[3] USCIS devotes part of its motion (Doc. 14) to asserting and discussing some of the exemptions, addressing documents withheld in response to Ghinis's request for the 210 A-File. But Ghinis clarifies in his cross-motion and response that he "is not seeking to litigate the withholding of records from the [210 A-File]." (Doc. 15 at 9 n.1). Thus, FOIA's exemptions are not at issue and need not be addressed.

Doc. 14-1). But even assuming that the declaration was submitted in good faith, it is neither "relatively detailed" nor "nonconclusory," and thus it does not carry the day for USCIS.

In her declaration, Munita explains both USCIS's general process for handling FOIA requests and what occurred in response to Ghinis's requests. "USCIS is the custodian for approximately 70 million A-[F]iles," many of which are stored at the NRC in Lee's Summit, Missouri. (Doc. 14-1 ¶¶ 7–8). And "an A-File might alternatively be located at one of the hundreds of USCIS or ICE field offices around the country." (*Id.* ¶ 9). When the staff at the NRC receives a FOIA request for an A-File, they "use the information provided such as the subject's name, date of birth and Alien number to search for their A-File in the RAILS[4] and Central Indexing System (CIS) databases"—"federal government computer databases that record[] and track[] the location of A-Files." (*Id.* ¶ 10). When someone is assigned more than one Alien Registration Number, "[t]he NRC will endeavor to consolidate th[o]se files where practicable." (*Id.* ¶ 11). A-Files "can get lost for a variety of reasons," and "[t]he most common reason . . . is the age of the original [A-File]." (*Id.*).

When USCIS received Ghinis's request for a complete copy of the 007 A-File, staff "determined that based on the information being sought, any records

---

[4] If RAILS is an acronym, USCIS does not explain what it stands for.

in USCIS's control that were responsive to the request and subject to the FOIA would be located in the A-Files of the individual who was the subject of the . . . request." (*Id.* ¶¶ 12–13). "No other record system was likely to produce responsive documents." (*Id.* ¶ 13). According to Munita: "NRC staff ran computerized database searches in the RAILS and CIS databases using the information supplied by the Plaintiffs [sic] with their FOIA request. NRC staff were unable to locate [Ghinis's] A-[F]ile using his name and A number provided. The system showed a notation that the file was lost, and the NRC notified [Ghinis] of its results." (*Id.* ¶ 14). Ghinis's 007 A-File was lost, says Munita, because of "the age of the original [A-File]." (*Id.* ¶ 11). Notably, Munita does not provide the location of the "lost" notation or explain when that notation was made, when the file was lost, or how USCIS knows (or why it believes) that the reason the file was lost was its age.

Ghinis then "submitted a new FOIA request seeking a complete copy of his A-[F]ile providing a different A-number: No. A210 065 355." (*Id.* ¶ 15). Using that new A number, "NRC staff ran computerized database searches in the RAILS and CIS databases . . . and located an A-[F]ile which contained records with both A numbers on them." (*Id.* ¶ 16). "USCIS produced 394 pages, 18 pages of which were partially withheld under" two FOIA exemptions. (*Id.* ¶ 17).

7

With his summary judgment motion, Ghinis submitted two documents[5]: a two-page document titled "History Inquiry for T007483725" that was provided to him by USCIS in a prior FOIA response and a letter dated June 17, 1987, written by his father. (Doc. 15 at 21–25; *see also* Doc. 17 at 3 n.1 (explaining how Ghinis obtained the "History Inquiry")). Ghinis characterizes the "History Inquiry" as reflecting that the 007 A-File "was last seen at the USCIS Philadelphia, Pennsylvania Field Office," (Doc. 15 at 12), and a fair reading of this document—the dates on which range from 2007–2009—is that the file was at least noted to be in Philadelphia in that time period, (*see id.* at 22–23). And in the 1987 letter—which Ghinis characterizes as "in [USCIS]'s possession," (*id.* at 12)—Ghinis's father stated, "[t]o whom it may concern": "The certificate of Naturalization of my son, Gilbert G. Ghinis[,] were [sic] left in my safe deposit box at the National Security Bank, Brumwick Ave In Trenton[,] N.J. in 1962.- According to the bank, they were mailed to the immigration & Naturalization office in Newark, N.J." (Doc. 15 at 25).

Ghinis argues that in light of these documents, USCIS should explain—yet Munita did not—why USCIS did not search for the 007 A-File in the Philadelphia or Newark field offices. (*See id.* at 12–13). Ghinis notes that "[a]n

---

[5] Ghinis also submitted a third document—the Notice of Appear that he received in 2019, (*see* Doc. 15 at 17–20)—but that document is not relevant to the adequacy of the search.

8

agency 'cannot limit its search' to only one or more places if there are additional sources 'that are likely to turn up the information requested.'" (Doc. 15 at 14 (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990))).

In its response and reply, USCIS asserts that Ghinis is suggesting that it was obligated "to search the hundreds of USCIS and ICE field offices around the country." (Doc. 16 at 1). USCIS also doubles down on its explanation that its "search for the requested A-File indicates the requested A-file is lost," (*id.* at 2), and reiterates the averments in the Munita declaration, (*id.* at 4–5). And rather than explaining what the "History Inquiry" document is or what its notations denote, USCIS merely asserts that "even if true that [the 007 A-File] was in Philadelphia thirteen years ago, this fails to credibly offer any evidence [that it] is not now lost as indicated by USCIS's record search." (*Id.* at 6). But there are at least two problems with this argument; the "lost" notation explanation is, as noted earlier, undetailed and conclusory, and the "age of the file" explanation for why the file was lost falls flat in the face of a notation that the file's location was recorded as recently as 2009.

In sum, USCIS has not "show[n] beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Ray*, 908 F.2d at 1558 (alteration in original) (further internal quotation marks omitted) (quoting *Miller*, 779 F.2d at 1383). Indeed, although "[t]here is no requirement that an agency search every record system," USCIS, "at the very

least, . . . was required to explain in its affidavit [why] no other record system was likely to produce responsive documents," *Oglesby*, 920 F.2d at 68, especially once Ghinis presented documents giving reason to believe that the file could be at one or two field offices that the agency did not search. On this scant record, the Court cannot resolve the issue whether USCIS's search was adequate, and neither side is entitled to summary judgment.

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** as follows:

1. USCIS's Motion for Summary Judgment (Doc. 14) is **DENIED without prejudice**.

2. Ghinis's Motion for Summary Judgment (Doc. 15) is **DENIED without prejudice**.

3. The Court will schedule a status conference by separate notice.

**DONE** and **ORDERED** on March 22, 2023.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

10